COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP821**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019JV94**

**IN COURT OF APPEALS
DISTRICT II**

IN THE INTEREST OF D.A.M., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

   PETITIONER-RESPONDENT,

 V.

D.A.M.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed*.

¶1    NEUBAUER, C.J.[1]  D.A.M. appeals from an order of the circuit court adjudicating him delinquent entered when the court found that he violated WIS. STAT. §§ 947.01(1) and 947.019(1) by repeatedly threatening to shoot a school staff member on school property.  D.A.M. does not challenge the finding that he violated § 947.01(1), but argues that there is insufficient evidence to adjudicate him delinquent for making terrorist threats in violation of § 947.019(1).  Because we conclude that there is sufficient evidence to support the adjudication of delinquency for making terrorist threats, we affirm.

¶2    The parties do not significantly dispute the facts of this case relevant to this appeal.  The State filed a delinquency petition on April 9, 2019, alleging that D.A.M. committed the offenses of disorderly conduct and making terrorist threats.  The charges arose from an incident at Bradford High School in Kenosha ("Bradford") on April 5, 2019.  A court trial was held on May 29, 2019.

¶3    At trial, J.S., who was the dean of students at Bradford at all times relevant to this appeal, testified as to the events involving D.A.M. on April 5.  J.S. testified that he saw D.A.M. outside the main entry doors of Bradford on that day around the 3:00 p.m. school release time.  J.S. testified that D.A.M. was no longer a student at Bradford and was attending Hillcrest School ("Hillcrest") at that time. J.S. further testified that D.A.M. was not allowed on Bradford school premises on April 5 and that J.S. made contact with D.A.M. on that day and asked him to leave the premises.  According to J.S., D.A.M. complied with the request by walking back to the sidewalk where he was permitted to stand.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4    J.S. testified that D.A.M. then came back on the school's property, was again told by J.S. that he was not allowed to be there, and again walked back to the sidewalk where he was allowed to stand. According to J.S., D.A.M. came onto school property again for a third time, this time walking in one of the school parking lots with a female student at Bradford. J.S. again told D.A.M. that he needed to exit the school property, at which time D.A.M. told the girl he was with that he was going to shoot J.S. J.S. was able to hear the threat and again told D.A.M. to leave the premises.

¶5    After J.S. told D.A.M. to exit the property for the third time, D.A.M. replied that he used to like J.S. but did not like J.S.'s "bitch ass anymore." J.S. testified that D.A.M. further stated that "on folks[,] he was going to shoot me." J.S. confirmed that it was his understanding that "on folks" was a gang reference.

¶6    After making the second threat, D.A.M. did not leave school property but continued to walk in the parking lot. J.S. testified that he called the school resource police officer, Arturo Gonzales, for support and continued to watch D.A.M. J.S. testified that he then heard D.A.M. say to the girl who D.A.M. was with that he was going to "cap my ass." After hearing the third shooting threat from D.A.M., J.S. stated that he disengaged from D.A.M. and kept his distance.

¶7    J.S. testified that on the day D.A.M. made the threats, he reviewed the incident and threats with Gonzales and with J.S.'s supervisor at Bradford. J.S. also emailed the principal at Hillcrest, the school D.A.M. attended at the time of the incident, to report the threats.

¶8    According to J.S.'s testimony, the investigation into the threats continued on the following Monday, April 8. J.S. participated in a meeting with

the principal of Hillcrest and other administrators to review the video surveillance of the incident and to discuss how to potentially address D.A.M.'s threats and behavior. J.S. testified that he took the threats from D.A.M. to shoot J.S. seriously at the time D.A.M. made them and that he continued to believe that the threats were serious and to feel threatened.

¶9 Gonzales also testified at the court trial. He testified that he is employed by the Kenosha Police Department as the school resource officer at Bradford. Gonzales was working in that capacity on April 5 at school release time when he received a radio call from J.S. requesting assistance in the parking lot due to some threats that were being made to J.S. Gonzales explained that school release time is "very chaotic," with some 1600 kids trying to leave the school at that time. Gonzales testified that J.S. identified D.A.M. as the person who had made the threats and that Gonzales knew D.A.M., knew that D.A.M. was no longer a Bradford student, and knew that D.A.M. was not allowed on Bradford property. Gonzales stated that D.A.M. had left the premises by the time Gonzales arrived to assist J.S.

¶10 Gonzales testified that J.S. followed the protocol for reporting the threats; that Gonzales met with J.S., the Hillcrest principal, and other administrators on April 8 to discuss the threats; and that Bradford administrators requested that law enforcement file a complaint arising from the threats. Gonzales also stated that he took a written statement from J.S. regarding D.A.M.'s threats to shoot J.S. and that Gonzales took those threats seriously.

¶11 At the close of the evidence, the trial court adjudicated D.A.M. delinquent of both the terrorist threats and the disorderly conduct counts. The court found "the witnesses credible" and "that the State ha[d] met [its] burden of

proof." D.A.M. appeals the adjudication of delinquency on the terrorist threats count.

¶12 The parties do not dispute the applicable standard of review. Specifically, both agree that we must evaluate all of the evidence presented at trial "in the light most favorable to the finding" of guilt. *State v. Poellinger*, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990) (citation omitted). The Wisconsin Supreme Court has explained the standard as follows:

> The test is not whether this court or any of the members thereof are convinced [of the defendant's guilt] beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true.... The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted....

*Id.* at 503-04 (alterations in original; citations omitted). In evaluating the decision of the trial court, we can only overturn the adjudication of delinquency if the evidence before the trial court "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *Id.* at 507.

¶13 In light of this standard, D.A.M. argues that the evidence presented at the trial is insufficient to support the court's adjudication of delinquency on the charge of making terrorist threats in violation of WIS. STAT. § 947.019. Under § 947.019,

> **(1)** Whoever, under any of the following circumstances, threatens to cause the death of or bodily

5

harm to any person or to damage any person's property is guilty of a Class I felony:

> **(a)** The actor intends to prevent the occupation of or cause the evacuation of a building, dwelling, school premises, vehicle, facility of public transportation, or place of public assembly or any room within a building, dwelling, or school premises.

> **(b)** The actor intends to cause public inconvenience.

> **(c)** The actor intends to cause public panic or fear.

> **(d)** The actor intends to cause an interruption or impairment of governmental operations or public communication, of transportation, or of a supply of water, gas, or other public service.

> **(e)** The actor creates an unreasonable and substantial risk of causing a result described in par. (a), (b), (c), or (d) and is aware of that risk.

According to D.A.M., the State presented insufficient evidence to conclude under any of the subsections of this statute that D.A.M. made terrorist threats while on or near Bradford on April 5. As we now explain, we disagree with D.A.M.

¶14 D.A.M. argues that the State failed to meet its burden even as to the first element—a threat "to cause the death of or bodily harm to any person." WIS. STAT. § 947.019(1). According to D.A.M., this first element requires a "true threat," meaning that the person making the threat had to foresee that "a listener would interpret [the statement] as a serious expression of a purpose to inflict harm." *State v. Perkins*, 2001 WI 46, ¶29, 243 Wis. 2d 141, 626 N.W.2d 762. D.A.M. relies on *Perkins* and *State v. Douglas D.*, 2001 WI 47, ¶34, 243 Wis. 2d 204, 626 N.W.2d 725, which sets forth the factors a court should consider in evaluating whether a statement arises to the level of a "true threat," in support of this argument.

¶15 The First Amendment protection against government interference with the freedom of expression does not extend to prevent prosecution of a "true threat." *Perkins*, 243 Wis. 2d 141, ¶17. As our supreme court has explained,

> A true threat is determined using an objective reasonable person standard. A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech. It is not necessary that the speaker have the ability to carry out the threat. In determining whether a statement is a true threat, the totality of the circumstances must be considered.

*Id.*, ¶29 (footnotes omitted). When applying this objective test, this court considers "the full context of the statement, including all relevant factors that might affect how the statement could reasonably be interpreted." *Id.*, ¶31.

¶16 In considering the totality of the circumstances, courts have a nonexhaustive list of factors to consider: "how the recipient and other listeners reacted to the alleged threat, whether the threat was conditional, whether [the threat] was communicated directly to its victim, whether the maker of the threat had made similar statements to the victim on other occasions, and whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence." *Douglas D.*, 243 Wis. 2d 204, ¶34 (quoting Perkins, 243 Wis. 2d 141, ¶31).

¶17 Under the analysis, we find that the evidence is sufficient to support the circuit court's conclusion that the statements made by D.A.M. around and to J.S. rose to the level of an unprotected criminal threat under WIS. STAT. § 947.019(1).

¶18 In its ruling adjudicating D.A.M. delinquent of making terrorist threats, the circuit court addressed two of the elements of WIS. STAT. § 974.019.

As to the first element (whether D.A.M. threatened to cause the death or bodily harm of J.S.), the court found that "the comments that [D.A.M.] made about shooting or capping, or getting a gang to shoot [J.S.] is a threat of bodily harm" and that that fact is not "even anything anybody can argue about." The court found that the State met its burden of proving § 974.019(1) because, among other reasons, it was made directly to school personnel and given the climate in this country for at least the last twenty years since the Columbine shootings, "[i]n this day and age … a reasonable person making that threat would foresee that a reasonable person would interpret the threat as a serious expression of intent to do harm."

¶19    We conclude that the evidence presented at trial is sufficient to support this finding. There was no indication that the comments were made in jest, or involved political views or any other form of protected speech. They were not innocuous. D.A.M. repeated his comments three times, and they unequivocally and unconditionally conveyed the message directly to J.S. that D.A.M. was threatening to shoot him. A speaker would reasonably foresee that a listener would reasonably interpret these threats as a serious expression of a purpose to inflict harm.

¶20    Turning to the second element of the statute, the State needed only to prove one of the elements in WIS. STAT. § 974.019(1)(a)-(e) in order for the court to adjudicate D.A.M. delinquent of making terrorist threats. D.A.M. contends that the State's evidence fell short on all of the elements set forth in these subsections. The bulk of D.A.M.'s argument appears to be an attempt to chalk up his threats toward J.S. as being the expected response from "a teenager receiving consistent reprimands from a school authority figure." D.A.M. tries to downplay the seriousness of the threats and also argues that there was no evidence presented that

8

D.A.M. would have known that making such threatening statements would be disruptive. However, these arguments ignore the fact that evidence to the contrary was presented at trial and the circuit court found that evidence to be credible and sufficient to support the conclusion that D.A.M. violated § 947.019.

¶21 At the close of evidence at trial, the court found there was no evidence that D.A.M. had intended to prevent the occupation of a building or cause its evacuation as prohibited by WIS. STAT. § 974.019(1)(a). The court did find, however, the testimony proffered at trial was sufficient to support a conclusion that D.A.M. violated paras. (b), (c), and (d) of § 974.019(1) by causing "public inconvenience," "public panic or fear," and "an interruption or impairment of government operations."

¶22 Regarding these elements, the court found that the school and school grounds are a "public setting" and the repeated threats were made with the intent to cause "public panic or fear" in violation of WIS. STAT. § 947.019(1)(c). The court found that J.S. took the threats seriously and they caused him fear. The court also noted that at least two girls heard the threats and that they were made at a time when 1600 students were coming out of the school. Accordingly, the court found that "panic and fear" would naturally arise from statements such as those D.A.M. made, "especially when they are repeatedly said, and by a person who is not even supposed to be on school property."

¶23 Similarly, the circuit court found that the State had met its burden of proving that the threats made by D.A.M. caused "an interruption of the education to the students" not only at Bradford, but also at Hillcrest because of the necessity to involve administrators from there as well. The court concluded that this need to take administrators at both schools away from their normal duties in order to

address the threats made by D.A.M. was a clear interruption of government function as set forth in WIS. STAT. § 947.019(1)(d).

¶24 The court specifically found the testimony of J.S. and Gonzales credible and, based on their testimony, concluded that the State met its burden of proving beyond a reasonable doubt that D.A.M. made terrorist threats as defined by WIS. STAT. § 974.019. "[W]e defer to the circuit court's credibility determinations and we affirm a circuit court's findings of fact unless they are clearly erroneous." ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359. There is no reason for us to second-guess the circuit court's credibility determinations here, nor for us to supplant the court's findings that D.A.M. made threats to J.S. that served to cause public fear and panic, and to disrupt the normal functioning at Bradford and Hillcrest. The statements made by D.A.M. were intended as a threat to cause bodily harm to J.S.; were taken as such by J.S., Gonzales, and administrators at both schools involved; and were intended to cause public fear or panic and to interrupt the normal functioning of the schools.

¶25 Viewing the evidence in the light most favorable to the finding of guilt, we conclude that there is sufficient evidence to support the adjudication of delinquency on both charges against D.A.M. We affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.